UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **CYNTHIA WALKER,** | : | **Case. No.** |
| 5108 Englewood Drive | : | |
| Liberty Township, OH 45011 | : | **Judge** |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| **XAVIER BECERRA, SECRETARY,** | : | |
| **DEPARMENT OF HEALTH AND** | : | **COMPLAINT AND JURY DEMAND** |
| **HUMAN SERVICES (Centers for** | : | |
| **Disease Control and Prevention),** | : | |
| | : | |
| Defendant. | : | |

## INTRODUCTION

1. This is an action for disability discrimination and retaliation in violation of the Rehabilitation Act of 1974, 29 U.S.C. §791 and Title VII of the of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e-3. Plaintiff also asserts illegal harassment and a hostile environment under the Rehabilitation Act and Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e-2.

## JURISDICTION

2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 as Plaintiff's claims arise under the laws of the United States.

## PARTIES

3. Plaintiff is a former employee of the United States Department of Human Services. (DHS). Defendant Becerra is the Secretary of the Department.

1

**FACTS**

4. Plaintiff is an African American female. Prior to her disability retirement, she had been employed by the federal government for nearly 30 years.

5. Plaintiff worked as a Biologist at NIOSH/CDC in Cincinnati. During the time relevant to her claims, her duties were to maintain records for samples and field studies, prepare supplies, and conduct literature searches. Plaintiff also provided assistance as needed.

6. From about March of 2015 through December of 2015, Plaintiff worked from home four days per week pursuant to a telework plan.

7. Plaintiff received satisfactory evaluations ad was rated as "Achieved Expected Results" for both the 2014 and 2015 appraisal periods. Dr. John Snawder was Plaintiff's direct supervisor and rating official at the time.

8. In December of 2015, Dr. Samuel Glover became the Branch Chief.

9. Plaintiff suffers from Lumbar Degenerative Disc Disease, Reactive Airway Disease, and Anxiety. She is unable to sit or stand in the laboratory or office for extended periods of time. Her physician advised that she needs to lay down during rest periods throughout the day. Her anxiety can limit her ability to concentrate in the office and laboratory.

10. In January of 2016, Plaintiff requested telework four days per week as a reasonable accommodation for her disabilities. On February 9, 2016, the Agency's Reasonable Accommodation Specialist (RAS) advised Snawder that Plaintiff was disabled and that the Agency needed to "dialogue with her" regarding her requested accommodation or another other alternative that could be granted. The memo cautioned against retaliation.

11. On the morning of March 16, 2016, Plaintiff notified Snawder and Glover that she was sick and would not be at work. Glover questioned whether Plaintiff was sick.

12. On March 28, 2016, Plaintiff made her initial contact with the EEO Officer at the Agency to initiate the counseling and complaint process.

13. On April 21, 2016, Glover issued a written counselling to Plaintiff for her alleged frequent use of annual and sick leave for unscheduled absences. Plaintiff wanted to use her sick or annual leave to improve her medical condition. Glover's denial of her requests for time off made her sicker.

14. Plaintiff was at her Cardiologist for testing on April 27, 2016 and her cell phone rang. Glover left a voicemail directing Plaintiff to report to work within two hours. He also stated that if she was not at work within two hours, she would be charged AWOL.

15. On April 28, 2016, Plaintiff's physician submitted FMLA paperwork setting forth her need for intermittent leave. He stated that the "ideal situation is allowing patient to work from home."

16. April 29, 2016, Glover charged Plaintiff with 24 hours (3 days) of AWOL for time spent addressing medical issues. However, Plaintiff had notified Snawder that she had the appointment. As a result, Glover was directed to reverse the AWOL designation and to pay Plaintiff for those dates.

17. Plaintiff requested advanced sick and annual leave to deal with her medical issues and disability. Her requests were denied. The Agency claimed Plaintiff could not prove that she could pay it back, but she accrued eight hours of annual leave and four hours of sick leave every two weeks. Requests by other employees were granted.

18. On May 2, 2016, Glover claimed Plaintiff had exhibited poor work performance during the period of September to December 2015. Glover was not the Branch Chief during that time, and Snawder had already issued Plaintiff a satisfactory performance rating that included that period.

19. Glover threatened to remove Plaintiff from telework. He claimed her performance was unsatisfactory and that she failed to follow instructions. However, Plaintiff was unable to complete assignments due to ongoing computer problems. Snawder knew she could not access the computer files he wanted her to work on. Glover acted as though Plaintiff was intentionally not doing work.

20. On May 4, 2016, the Agency's Medical Review Authority (MRA) determined that Plaintiff should receive four days of telework each week for a period of six *months*. Glover rejected the MRA's recommendation, and instead, approved the request for a period of only six *week*s.

21. On June 6, 2016, Glover issued Plaintiff an Official Reprimand for failing to complete tasks while in a telework status. Glover included some items from 2015. In addition, as noted above, Plaintiff was having computer problems in the spring of 2016 which affected her work.

22. On June 10, 2016, contrary to the MRA's recommendation, Glover denied Plaintiff's accommodation request for four days of telework. Glover claimed there was undue hardship, and that Plaintiff would be unable to do lab work. However, Plaintiff spent very little time – a matter of days each year – in the lab during her most recent years of employment with the Agency.

23. At the same time, Glover took away Plaintiff's two days a telework each week which had been approved through the end of 2016. Instead, Glover mandated that she work on-site five days per week. However, Plaintiff continued to suffer from the impairments that the MRA found to be disabling and which, according to the MRA, supported six-additional months of the four-day per week telework accommodation. Glover did not offer any forms of accommodation that would have allowed Plaintiff to work at the facility five days per week.

24. On June 27, 2016, Plaintiff appealed the denial of her accommodation request. In support of the appeal, she submitted additional medical documentation. Glover and the Agency then used the additional medical information against Plaintiff. On July 5, 2016, Glover issued a memorandum banning Plaintiff from entering the laboratory or being assigned any laboratory duties. Glover claimed that her restrictions created a grave hazard to herself and others in the lab.

25. On July 12, 2016, the Agency barred Plaintiff from entering the facility because she allegedly made a workplace threat. Plaintiff unequivocally denied the allegation.

26. On July 13, 2016, Glover rejected Plaintiff's appeal of the June 27, 2016 decision denying her request for accommodation. Plaintiff appealed again and cited Glover's failure to explore other options for accommodation.

27. On July 27, 2016, Plaintiff notified Chris Gjessing, the Deputy Director, of Glover's ongoing harassment and discrimination. She asked for Gjessing's help. He offered none and referred her back to Glover.

28. On July 30, 2016, Gjessing denied Plaintiff's appeal contesting the ongoing denial of her request for accommodation.

29. Plaintiff appealed again on August 4, 2016. The appeal was denied on August 19, 2016, but the Agency agreed to explore reassignment to a vacant position.

30. In late July and early August of 2016, Glover repeatedly accused Plaintiff of being AWOL because she did not report the work that she had done on various days. Because Plaintiff had been barred from the office, she received assignments from Glover via email, but she could not access them because certain links to materials were broken. She spoke with the IT Specialists who said that her computer needed to be reimaged. It could not be done remotely. Plaintiff eventually received a second computer in the mail that worked. In the meantime, Glover charged Plaintiff with being AWOL because she could not access her assignments.

31. On August 10, 2016, Plaintiff amended her prior EEO complaint to include Glover's ongoing conduct and the additional actions taken against her.

32. On October 5, 2016, Plaintiff received a "Proposal to Remove." The Proposal included false allegations by Glover that Plaintiff was insubordinate and failed to follow instructions during periods of time when she had computer problems and could not complete her work. The Proposal also included AWOL charges and the alleged threat from July of 2016. (Id.).

33. On October 6, 2016, Plaintiff amended her EEO complaint to include the Agency's new actions.

34. Plaintiff responded to the proposed removal on November 3, 2016.

35. Plaintiff determined that she could no longer work under the circumstances and applied for disability retirement on or about May 3, 2017. Glover placed her Leave Without Pay.

6

36. On May 9, 2017, Shaunette Crawford, the Executive Officer in the Office of the Director, rejected the Agency's proposed removal of Plaintiff and reduced the penalty to a two-week suspension.

37. Plaintiff has exhausted her administrative remedies with DHS and the Equal Employment Opportunity Commission. (EEOC). On July 26, 2023, the EEOC's Office of Federal Operations denied Plaintiff's final appeal and issued a decision advising Plaintiff of her right to file an action in United Stated District Court within 90 days of her receipt of the decision.

## COUNT I
**(Disability Discrimination)**

38. Plaintiff incorporates Paragraphs 1-37 as if fully restated

39. Plaintiff was disabled as defined by the Act. The Agency was aware of Plaintiff's disability. Plaintiff was qualified for her position with or without accommodation. She requested an accommodation for telework four days per week. Glover rejected the recommendation of the Agency's MRA, refused to provide the requested accommodation, and thereafter refused to allow Plaintiff to work from home for even for the previously agreed-upon two days per week.

40. The Agency violated the Rehabilitation Act by failing and refusing to accommodate Plaintiff. Doing so would not have resulted in undue hardship for Defendant.

41. In addition, as set forth above, the Agency discriminated against Plaintiff by subjecting her to adverse actions because of her disability, including her constructive discharge.

## COUNT II
### (Retaliation)

42. Plaintiff incorporates Paragraphs 1-41 as if fully restated.

43. Plaintiff engaged in protected conduct by requesting an accommodation and by filing complaints of discrimination and reprisal with the Agency's EEO office.

44. The Agency was aware of Plaintiff's protected conduct and thereafter engaged in a pattern of retaliatory conduct including, among other things, subjecting her to heightened scrutiny, charging her with AWOL, refusing its own MRA's recommended accommodation, eliminating Plaintiff's opportunity for telework altogether, falsely accusing her of not doing her work, falsely accusing her of making a threat, and proposing her removal, which was later determined to be excessive – all of which resulted in Plaintiff's constructive discharge.

45. There is a causal connection between Plaintiff's protected conduct and the pattern of adverse treatment and actions described above. Prior to Glover taking over as the Branch Chief and Plaintiff's request for accommodation, she received satisfactory evaluations and had not been disciplined for any reason. After engaging in protected activity, she was viewed as a problem employee.

## COUNT III
### (Hostile Environment)

46. Plaintiff incorporates Paragraphs 1-45 as if fully restated.

47. Plaintiff was subjected to ongoing and repeated acts of harassment based on her disability, protected conduct, and race that began in early 2016 and continued beyond the October 5, 2016 Proposal to Remove her from employment with the Agency. Plaintiff advised

the Agency's EEO Office of more than 35 events and occurrences between March 16, 2016 and October 5, 2016 that she found to be discriminatory, retaliatory, and/or incidents of harassment.

48. The harassing conduct described above created a hostile work environment for Plaintiff. The harassment was unwelcome, severe, and pervasive and resulted in Plaintiff's constructive discharge.

49. As a result of the foregoing conduct, Plaintiff has suffered a loss of income and fringe benefits. Plaintiff has further suffered emotional distress and mental anxiety.

50. Wherefore, Plaintiff demands the following:

    a. reinstatement or front pay in lieu thereof;

    b. payment for all lost income and benefits;

    c. compensatory damages;

    d. reasonable attorney's fees and costs;

    e. prejudgment interest; and

    f. all other legal and equitable relief to which she is entitled.

51. Plaintiff demands a trial by jury on all issues triable to a jury.

Respectfully submitted,

s/ David Torchia
David Torchia (0015962)
Tobias, Torchia & Simon
600 Vine Street, Suite 910
Cincinnati, OH 45202
(513) 241-8137
Email: davet@tktlaw.com
Attorney for Plaintiff